**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01746-NYW

JAMES RANDY KEE,

      Plaintiff,

v.

TOWN OF MOUNTAIN VILLAGE and
KIMBERLY MONTGOMERY,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter comes before this court on Defendants Town of Mountain Village (the "Town") and Kimberly Montgomery's ("Ms. Montgomery" and collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") [#26, filed September 30, 2019], and Plaintiff James Randy Kee's ("Plaintiff" or "Mr. Kee") Motion to Amend/Correct/Modify First Amended Complaint ("Motion to Amend"), [#33, filed October 25, 2019]. The undersigned considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated August 7, 2019, [#22]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motions, associated briefing, and applicable case law, this court **GRANTS** the Defendants' Motion to Dismiss in its entirety and **DENIES** Plaintiff's Motion to Amend.

## FACTUAL BACKGROUND

      The court draws the following facts from the First Amended Complaint [#14] and presumes they are true for purposes of the instant Motions. Mr. Kee was hired as a Building Official with

the Town of Mountain Village in May 2012. [#14 at ¶ 6]. In this role, Mr. Kee was responsible for ensuring the Town's adherence to applicable building codes for all building projects undertaken by the Town. [*Id.*]. Mr. Kee's ability to perform his responsibilities as Building Official was supported by his extensive background in construction and building regulations, as well as his knowledge of the codes and zoning variances applicable to the Town of Mountain Village building projects he oversaw. [*Id.*].

In 2017, the Town hired a new Planning Director, Michelle Haynes ("Ms. Haynes"). [*Id.* at ¶ 8]. Mr. Kee noticed a "distinct change in how the building department was managed" after Ms. Haynes was hired, and Ms. Haynes began to question Mr. Kee's aptitude as Building Official. [*Id.*]. Ms. Haynes also requested that Mr. Kee apply building codes other than those adopted by the Town, notwithstanding the fact that the projects she asked Mr. Kee to apply new building codes to were managed by the Town. [*Id.*].

Subsequently, Mr. Kee respectfully but firmly stated concerns to both Ms. Haynes and other managers in the Planning Department regarding the impropriety of applying new building codes to Town projects. [*Id.* at ¶ 9]. Among his concerns were violations of existing building codes that created a "serious hazard to the safety and wellbeing of the citizens and visitors of the Town." [*Id.*]. Mr. Kee was reprimanded by Ms. Haynes for "not being a team player" when he continued to request that the Town adhere to its own building codes. [*Id.* at ¶ 10]. She also publicly ridiculed Mr. Kee during meetings. [*Id.*].

While it was not his responsibility to do so as Building Official, Mr. Kee raised concerns to management when he felt that Town building projects contained flaws that would cause waste for the community. [*Id.*]. Mr. Kee was met with hostility when he voiced these concerns to management. [*Id.*].

On December 20, 2018, Mr. Kee received his first poor evaluation from the Town. [*Id.* at ¶ 12]. Ms. Haynes completed the evaluation and indicated that Mr. Kee "was not being a team player and was causing negativity in the department as a result." [*Id.*]. Because he disagreed with some of the statements made in Ms. Haynes's evaluation of him, Mr. Kee requested a review of the evaluation. [*Id.*].

On January 2, 2019, the Town's Human Resources Department held a meeting with Mr. Kee, wherein he was asked to sign a Resignation Agreement. [*Id.* at ¶ 13]. Per the terms of the proposed Resignation Agreement, Mr. Kee was offered an opportunity to agree to resign from his position as Building Official in exchange for three months of continued employment. [*Id.*]. Mr. Kee was warned that, should he elect not to sign the Resignation Agreement, he would be terminated. [*Id.*]. Mr. Kee did not sign the Resignation Agreement. [*Id.*].

Shortly thereafter, Mr. Kee filed a termination grievance with the Town Manager, Kimberly Montgomery. [*Id.*]. In a written response to Mr. Kee's grievance, Ms. Montgomery explained that Mr. Kee was not able to file a grievance for a resignation. [*Id.*]. Mr. Kee replied by letter that he had not resigned from his position. [*Id.*]. That same day, Mr. Kee was escorted from the building by security and provided his final paycheck. [*Id.*].

Mr. Kee was later approached by members of the local building community who communicated "knowledge that [Mr. Kee] had been escorted out of the building and terminated from his position." [*Id.* at ¶ 15]. Consequently, Mr. Kee has been forced to defend himself to members of the local building community regarding the manner of his removal as Building Official for the Town, and has struggled to obtain employment. [*Id.*].

# PROCEDURAL BACKGROUND

Believing the Town's conduct (1) violated Colorado statutory whistleblower protections, and (2) constituted deprivations of his property and liberty interests in contravention of 42 U.S.C. § 1983, Mr. Kee filed a Complaint in the San Miguel County District Court on May 16, 2019, naming only the Town as a Defendant. *See* [#1, #5]. The Town subsequently removed the case to the United States District Court for the District of Colorado on the basis of federal question jurisdiction. [#1]. On June 24, 2019, the Town filed a Motion to Dismiss for Failure to State a Claim. [#11]. In Response, Mr. Kee filed his First Amended Complaint as a matter of right, [#14], thereby mooting without prejudice the Town's pending Motion to Dismiss, *see* [#16]. Ms. Montgomery was added as a Defendant in Mr. Kee's First Amended Complaint. [#14]. In his First Amended Complaint, Mr. Kee asserts a claim for violation of 42 U.S.C. § 1983 against the Town for denying him his property interest in his position "without any hearing despite multiple requests for the actions being taken to be reviewed by management" ("Count I"), [*id.* at ¶¶ 16-26]; against all Defendants for deprivation of his liberty interest in violation of 42 U.S.C. § 1983 ("Count II"), [*id.* at ¶¶ 27-30]; and for violation of Colo. Rev. Stat. § 24-114-102 against all Defendants ("Count III"), [*id.* at ¶¶ 31-33].

Defendants filed the instant Motion to Dismiss for Failure to State a Claim on September 30, 2019. [#26]. Plaintiff filed his Response to the Motion to Dismiss on October 25, 2019. [#32]. That same day, Plaintiff filed the instant Motion to Amend/Correct/Modify First Amended Complaint. [#33]. Defendants filed both their Reply to the instant Motion to Dismiss and their Response to the instant Motion to Amend on November 15, 2019. [#36; #37]. Plaintiff filed his Reply to the Motion to Amend on November 22, 2019. [#38]. Thus, both the Motion to Dismiss

and Motion to Amend are fully briefed. Because both the Motion to Dismiss and the Motion to Amend are ripe, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (internal quotation marks omitted). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").

### II. Fed. R. Civ. P. 15

Rule 15(a) of the Federal Rules of Civil Procedure governs motions to amend when (as here) the moving party seeks leave to amend its pleadings on or before the deadline for joinder of parties and amendment of pleadings set by the Scheduling Order. *See Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (explaining that the movant need not demonstrate good cause under Rule 16(b) under such circumstances). Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R.

Civ. P. 15(a)(2). "Indeed, Rule 15(a)'s purpose is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Warnick v. Cooley*, 895 F.3d 746, 754-55 (10th Cir. 2018) (internal quotation marks omitted). But the court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996).

*Futility of amendments under Rule 15.* Courts, in their discretion, may deny leave to amend upon a determination that such amendment would be futile. *See Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (internal quotation marks omitted). While courts sometimes decline to consider futility in favor of a subsequent motion to dismiss, *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-CV-01145-DME-KMT, 2008 WL 2520423, at *4 (D. Colo. Jun. 20, 2008) (suggesting that a "futility argument seems to place the cart before the horse," and is better suited for a Rule 12(b)(6) motion), this court finds that it is more efficient in this case to consider the Parties' arguments in the context of this instant motion instead of awaiting another round of motions practice. "If a party opposes a motion to amend [...] on the grounds of futility, the court applies the same standard to its determination of the motion that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *JDK LLC v. Hodge*, No. 15-CV-00494-NYW, 2015 WL 5766466, at *2 (D. Colo. Oct. 2, 2015) (citation and internal quotation marks omitted) (ellipsis added).

**ANALYSIS**

I.      **Count I -- § 1983 Property Interest**

    A.      **Motion to Dismiss**

Plaintiff claims that the Town committed a § 1983 violation by allegedly denying Plaintiff due process before depriving him of a property interest, presumably under the Fourteenth Amendment.[1]  "[A] municipality can only be liable under § 1983 if its unconstitutional policy or custom caused the plaintiff's constitutional deprivation."  *Custinger v. City of Derby*, 591 Fed. App'x 689, 691 (10th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978)).  In other words, to succeed on a § 1983 claim against a municipality, a plaintiff must show (1) a predicate constitutional deprivation, (2) a municipal policy or custom, and (3) causation.  *See id.*

The Town moves to dismiss Count I for a variety of reasons, including for failure to allege municipal liability under *Monell* and its progeny and for failure to allege a cognizable constitutional deprivation.  [#26].  This court first considers the sufficiency of Plaintiff's Complaint as it relates to the underlying alleged constitutional deprivation, i.e. whether Mr. Kee states a cognizable claim that the Defendants unconstitutionally deprived him of a property interest in his continued employment.  Because I conclude that Plaintiff has failed to allege a constitutional deprivation of a protected property interest without due process, my analysis begins and ends there.

In order to establish a property interest in public employment protected by due process guarantees, a plaintiff must show a right to continued employment.  *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 538 (1985).  In the Tenth Circuit, property interests are created by "state

---

[1] The First Amended Complaint does not identify the constitutional amendment that Plaintiff alleges was violated by the Town.  *See generally* [#14 at ¶¶ 16-26].

law, contracts, or other mutually explicit understandings[.]" *Tiegen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007). Only if a public employee has a property interest in his employment does there need to be "some kind of hearing prior to the discharge of [the] employee." *Id.* at 1079 (internal quotations and citation omitted).

"[I]n Colorado, an employee is presumed to be at-will and can be terminated without cause or notice, and his termination does not give rise to a cause of action," unless the Plaintiff can establish that he had a legitimate expectation of continued employment by means of tenure, a contract for a fixed term of employment, an implied contract for continued employment, or by state law. *See Rooker v. Ouray Cnty.*, 841 F. Supp. 2d 1212, 1217 (D. Colo. 2012) (finding that local government employees "hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law.").

In this case, Plaintiff asserts a property interest in his continued employment with the Town. Plaintiff advances a variety of theories to support his claim that he had a cognizable property interest in his continued employment. First, he argues that at least one of two Colorado statutes, C.R.S. §§ 24-114-101 and 24-50.5-103, afford him protection as a whistleblower and therefore create a property interest in his employment notwithstanding his alleged whistleblowing activities. [#14 at ¶ 18]. Second, he argues that a whistleblowing provision in the Town's Employee Handbook operates as an implied contract of continued employment with the Town. [*Id.* at ¶ 20]. Third, and in the alternative, Plaintiff argues that Colorado common law recognizes an action for wrongful termination against public policy and that this law creates a property interest in his continued employment with the Town. [*Id.* at ¶¶ 21–25].

*Colo. Rev. Stat. § 24-114-102.* Plaintiff alleges that he is protected by, and the Town violated, C.R.S. § 24-114-101, *et seq.* [*Id.* at ¶ 18]. Specifically, Plaintiff contends that the Town would fall under the statute's jurisdiction as an entity that is party to a state agreement. [*Id.*]. Under the statute, "no appointing authority or supervisor of a private enterprise under contract with a state agency shall initiate or administer any disciplinary action against any employee on account of the employee's disclosure of information concerning said private enterprise." C.R.S. § 24-114-102. Under this provision, an "'[e]mployee' means any person employed by a private enterprise under contract with a state agency," and "'[d]isclosure of information' means the written provisions of evidence to any person, or the testimony before any committee of the general assembly, regarding any action" taken by "a private enterprise under contract with a state agency which, if not disclosed, could result in the waste of public funds, could endanger the public health, safety, or welfare, or could otherwise adversely affect the interests of the state." C.R.S. §§ 24-114-101(2), (3).

Defendants argue in their Motion to Dismiss that C.R.S. § 24-114-101, *et seq.*, does not apply to Plaintiff's former employment with the Town because (a) Plaintiff is not an "employee" under the statute because the Town is not a "private enterprise under contract with a state agency," and (b) Plaintiff's alleged whistleblowing fails to meet the statute's definition of "disclosure of information." [#26 at 8]. Accordingly, argue Defendants, Plaintiff has failed to plead a violation of C.R.S. § 24-114-102, and in any case, the statue does not create a property interest in continued employment. [*Id.* at 8-9]. For the following reasons, this court finds that C.R.S. § 24-114-101, *et seq.*, fails to create a property interest in continued employment for Plaintiff upon which to base his alleged § 1983 violation.

The Town is not a private enterprise but a public entity, and the plain language of Colo. Rev. Stat. § 24-114-102 limits the statute's protections to a private enterprise employee. As the Town explained, "employee" is defined as "any person employed by a private enterprise under contract with a state agency." Colo. Rev. Stat. § 24-114-101(2). Despite Mr. Kee's argument in Response, [#32 at 7-8], he cites no authority to support the proposition that the Town should be considered a private enterprise. Indeed, such an argument contradicts Mr. Kee's contention that he is a state employee for the purposes of Colo. Rev. Stat. § 24-50.5-103, as discussed below. Instead, this court takes judicial notice that the Town is incorporated as a Home Rule Municipality of Colorado. *See* [#26 at 13]; *see also* https://townofmountainvillage.com/site/assets/files/25834/town-of-mountain-village-home-rule-charter.pdf.

**Colo. Rev. Stat. § 24-50.5-103.** Under Colo. Rev. Stat. § 24-50.5-103, "a supervisor shall not initiate or administer any disciplinary action against an employee on account of the employee's disclosure of information." Here, an "'[e]mployee' means any person employed by a state agency." C.R.S. § 24-50.5-102(2), (3). Again, Mr. Kee contends that this provision applies not only to state employees, but also to municipal employees by implication. [#32 at 8-9]. This court respectfully disagrees. A court in this District explicitly held that "the plain terms of the whistleblower statute apply only to state employees," aptly observing that "[i]f the Colorado General Assembly had intended the statute to cover employees of other governmental entities, it could easily have so provided." *Clark-Wine v. City of Colorado Springs*, 556 F. Supp. 2d 1238, 1249 (D. Colo. 2008). Plaintiff cites no authority, and this court could independently find none, that applies § 24-50.5-103 outside the context of a state employee. Nor am I persuaded that § 24-50.5-103 can simply be extended by implication. Accordingly, I conclude that Colo. Rev. Stat. § 24-50.5-101, *et seq.*, is inapplicable to Plaintiff's former employment with the Town.

In his Motion to Amend, Plaintiff seeks to add not allegations but legal conclusions and case law to his third claim for relief. [#33]. Specifically, he proposes the following additional language:

> After the good faith effort is made the employee should not receive disciplinary action as a result of the disclosure. Disclosure under this statute can include statements made to a direct supervisor regarding the concerns protected in the statute. *See* Gansert v. State of Colorado, 348 F.Supp.2d 1215, 1228 (2004) [sic].

[#33-2 at ¶ 38]. Elsewhere in the Complaint, Plaintiff seeks to add the following language to support a claim under either C.R.S. § 24-50.5-103 or § 24-114-101.

> These laws specifically state, 'no appointing authority nor any supervisor . . . shall initiate or administer any disciplinary action against any employee on account of the employee's disclosure' under the statute. The projects that Mr. Kee was concerned with involved Colorado State funds and regulation. As such he should be protected under these statutes either as an employee of a subdivision of the State under C.R.S. § 24-50.5-103 or an employee of a Private enterprise under contract with a state agency under C.R.S. § 24-114-101. . . . The definition of Private enterprise under contract with a state agency in the Statute is very broad and includes any 'legal Entity which is a party to any type of state agreement.'

[#33-2 at ¶ 24]. But "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1299 (D. Colo. 2008) (internal citations omitted). Accordingly, Plaintiff's proposed amendments are futile and do not save his claim from dismissal for failure to state a claim under Rule 12(b)(6).

Having determined that neither § 24-114-101 *et seq.* nor § 24-50.5-101 *et seq.* are applicable to Plaintiff, this court need not further consider whether his disclosure was sufficient to satisfy either statute's definition of "disclosure of information" or whether either statute creates a protectable property interest in continued employment.

***Employee Handbook Whistleblower Provision.*** Plaintiff identifies a whistleblower provision in the Town's Employee Handbook that outlines "a procedure the town [sic] of Mountain

Village must follow to investigate retaliation complaints," and argues that this provision creates "an implied contract or at a minimum an expectancy of continued employment under these circumstances." [#14 at ¶ 20]. Specifically, Plaintiff alleges that the provision states that, "[t]he town is committed to protecting employees from interference with or retaliation for having made a protected disclosure or for having refused an illegal order." [*Id.*]. Therefore, alleges Plaintiff, the Town "did not follow its policy to investigate" Mr. Kee's claim that he was retaliatorily terminated. [*Id.*].

In their Motion to Dismiss, Defendants point to a different provision in the same Employee Handbook in support of their argument that the handbook "clearly and expressly states that it is not a contract of employment nor does it guarantee continued employment." [#26 at 11].[2] The Employee Handbook states in bold, capitalized text that "the language used in this handbook and any verbal statements of management are not intended to constitute a contract of employment,

---

[2] On Rule 12(b)(6) motions to dismiss the court "may consider in addition to the complaint, documents incorporated by reference into the complaint . . . and documents plaintiff[] relied upon in bringing suit." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013). "Because this [Motion] involves a Rule 12(b)(6) dismissal," the court draws the facts from Mr. Kee's First Amended Complaint; "from exhibits submitted with it or incorporated by reference; and from 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Davis v. BAE Systems Tech. Sols. & Servs., Inc.*, 764 Fed. Appx. 741, 742 n.1 (10th Cir. 2019) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Here, Mr. Kee's First Amended Complaint specifically references the Town's Employee Handbook. *See, e.g.*, [#14 at ¶ 20]. And the Employee Handbook—the authenticity of which is undisputed—is central to Mr. Kee's claim that he had a property interest in his continued employment with the Town. *See* [*id.* at 5–6]. Indeed, allegations contained in the Mr. Kee's First Amended Complaint quote the Employee Handbook verbatim. *See* [*id.* at ¶ 20]. In other words, the "parties do not dispute the authenticity of th[e] [Employee Handbook], and they are central to [Mr. Kee]'s claims because . . . [Mr. Kee] drew many of the allegations in the [First] Amended Complaint from them, sometimes verbatim[.]" *Davis*, 764 Fed. Appx. at 742 n.1. Accordingly, I conclude that the Employee Handbook, in its entirety, may factor into disposition of these Motions without conversion to a motion for summary judgment.

either express or implied, nor are they a guarantee of employment for a specific duration." [#50-1 at 50].

In Response, Plaintiff argues that the "Town Manager did not initiate th[e] process . . . indicated in the Handbook, which requires a review of [Mr. Kee's] complaint by the Audit Committee." [#32 at 11]. Thus, argues Plaintiff, "[t]here is a question of fact as to whether the Plaintiff had a continued expectancy in employment under the protections indicated in the[] [Employee Handbook] procedures." [*Id.*].

In light of the Employee Handbook's express disclaimer of any implied contract for continued employment, I find that the whistleblower provision therein falls short of creating either an implied contract or an expectancy of continued employment from which Mr. Kee can assert a property interest. Moreover, the whistleblower provision of the Employee Handbook reflects a procedural protection, rather than a substantive property interest. "[I]t is well established that 'an entitlement to nothing but procedure cannot be the basis for a property interest and by themselves, procedural protections do not support a legitimate claim of entitlement to future employment," and "this rule applies with equal force to procedural guarantees set forth in employee handbooks." *Angell v. Fairmont Fire Protection District*, 907 F. Supp. 2d 1242, 1259 (D. Colo. 2012). For the foregoing reasons, I conclude that the Employee Handbook does not create a property interest for purposes of Mr. Kee's first claim of relief under § 1983.

***Wrongful Termination Against Public Policy.*** Finally, Plaintiff alleges that he "was terminated from his position because he was questioning his supervisor and other management of the Town of Mountain Village on violations of building codes that were occurring in the building projects that the Town of Mountain Village was completing." [#14 at ¶ 21]. Because Colorado recognizes an action for wrongful termination against public policy after *Martin Marietta Corp. v.*

*Lorenz*, 823 P.2d 100 (Colo. 1992), argues Plaintiff, his termination constitutes a deprivation of a property interest in his continued employment with the Town. [#14 at ¶ 21]. Defendants argue in their Motion to Dismiss that Plaintiff's property interest here fails because there is no cognizable "due process claim of wrongful discharge in violation of public policy." [#26 at 12].

In Colorado, a claim of wrongful termination in violation of public policy is a tort. *See Martin Marietta*, 823 P.2d at 115 ("[A] claim for wrongful discharge based on the public-policy exception to the at-will employment doctrine sounds in tort[.]"). Contrary to Plaintiff's assertion, *Martin Marietta* did not create a property interest in employment to pursue a constitutional due process violation; it merely confirmed the existence of a state tort law action. But "the fact that the public policy exception created a right of action in certain circumstances does not, by itself, mean that employees discharged for reasons that violate public policy are given a property right in their employment." *Beck v. City of Durham*, 129 F. Supp. 2d 844, 850-51 (M.D.N.C. 2000). *See also Bennett v. Watters*, 260 F.3d 925, 929 (8th Cir. 2001) (holding that the right not to be discharged in violation of state's public policy is not a property interest for procedural due process purposes); *Reitz v. Persing*, 831 F. Supp. 410 (M.D. Penn. 1993) (holding that a state public policy exception to the at-will employment does not create a property interest in employment); *Jenkins v. City of Russellville*, 2007 WL 2081106, at *6 n.1 (W.D. Ky. July 18, 2007) (collecting cases).

And the court "does not find—and Plaintiff does not cite—any authority" under Colorado law that "stands for the proposition that [Colorado] public policy creates property rights in employment." *Beck*, 129 F. Supp. 2d at 851. Accordingly, this court will "not expand upon the meaning of the public policy exception to employment-at-will status" under Colorado state law. *Id.* "Therefore, because Plaintiff had no property interest in continued employment," this court

"finds that Plaintiff has failed to state a § 1983 claim against Defendants for violation of substantive or procedural due process rights." *Id.*

Accordingly, this court concludes that dismissal of Count I, without leave to amend, is appropriate.

## II.      Count II -- § 1983 Liberty Interest

### A.      Motion to Dismiss

Plaintiff asserts his second § 1983 claim against both the Town and Ms. Montgomery, and Plaintiff characterizes his second § 1983 claim as "asserting a lack of due process based on the lack of a name clearing hearing." [#32 at 5].  Defendants move to dismiss Plaintiff's second claim for relief for failure to plead any of the requisite elements of Plaintiff's § 1983 liberty interest claim.  Ms. Montgomery also moves to dismiss Count II, arguing that she is only sued in her official capacity.  [#26 at 5-6].

Defendants argue that Plaintiff has failed to plead each of the four requisite elements to demonstrate a deprivation of Plaintiff's liberty interest.  [#26 at 16–17]. To plead a § 1983 claim on grounds that the government infringed upon a public employee's liberty interest, a plaintiff must allege that (1) the government made a statement that "impugn[s] the good name, reputation, honor, or integrity of the employee;" (2) the statement is false; (3) the statement is "made during the course of employment and forecloses other employment opportunities;" and (4) the statement is disclosed publicly.  *See McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (internal quotations and citations omitted).  "These elements are not disjunctive," and "all must be satisfied to demonstrate deprivation of the liberty interest." *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).

For the following reasons, I find that Plaintiff has failed to allege the falsity of the alleged statement and thus fails to plead at least the second element of his liberty interest claim. Because all four elements delineated in *McDonald* are necessary to Plaintiff's second claim, I therefore conclude—without addressing the sufficiency of Plaintiff's Complaint with respect to the remaining elements—that Plaintiff has failed to sufficiently state a claim in this regard.

Plaintiff avers that "[a]fter he was escorted out of the building by security, Mr. Kee was approached by individuals in the building community, who indicated knowledge that he had been escorted out of the building and was terminated from his position." [#14 at ¶ 15]. As a result, alleges Plaintiff, he has "had to defend himself to the people in the building community who were informed of the manner of his removal" and avers that he "has struggled to obtain employment in the community." [*Id.*]. But Plaintiff also alleges in his Complaint that (a) he was told that if he didn't sign the Resignation Agreement he would be terminated; (b) he did not sign the Resignation Agreement; (c) he subsequently filed a grievance with Ms. Montgomery *in light of* his termination; and (d) was escorted from the building as soon as he informed Ms. Montgomery that he had not resigned. [*Id.* at ¶¶ 13–14]. Thus, Plaintiff has alleged both that he was (wrongfully) terminated and that he was escorted from the building after communicating to Ms. Montgomery that he had not resigned—in effect, communicating that he had elected to forego signing the Resignation Agreement in favor of being terminated.

According to the Complaint, any disclosure to the public regarding Mr. Kee's removal was accurate. He was escorted from the building, and he was terminated. Plaintiff alleges no additional public statements made by the Town or Ms. Montgomery concerning his removal.

### B.    Motion to Amend

Nor does Plaintiff's Motion to Amend his operative Amended Complaint to include more details about the alleged communication by Ms. Montgomery to individuals and businesses in the building community change this court's analysis. Specifically, he seeks to add an allegation that

> Mr. Kee was informed that Ms. Montgomery had herself verbally told the leadership of a local building organization, Pro-set, that Mr. Kee was escorted out of the building by police and had been fired. The management of Pro-set are involved in most building projects in the area and sit on the Design Review Board of the Town. Ms. Montgomery should have known that disclosure of these facts to the leadership of this organization would disseminate this information to the entire building community. Many of the remaining individuals that became aware of this information learned it from the management of Pro-Set.

[#33-2 at ¶ 19]. And although the operative Amended Complaint alleges that "security" escorted Mr. Kee from the building, [#14 at ¶¶ 13, 15, 24, 28], Plaintiff proposes amendments to the Complaint to change "security" to "police" in all instances, [#33-2 at ¶¶ 17, 19, 30, 34]. He also proposes an amendment to include an allegation that "[t]he information was shared to the community by Ms. Montgomery to important individuals in the building community," and ultimately "affected his reputation." [#33-2 at ¶ 35].

Plaintiff's proposed amendments to his Amended Complaint do not alter this court's conclusion as to the insufficiency of his § 1983 claim for an alleged unconstitutional deprivation of his liberty interest. The alleged amendments simply assert the same allegation, i.e., that Ms. Montgomery verbally informed the leadership of a local building organization, Pro-set, that Mr. Kee was escorted out of the building and had been fired. [#33-2 at ¶ 19]. Mr. Kee himself admits that he was (wrongfully) terminated and escorted from the building (by security or police). The proposed amendments do not allege the falsity of Ms. Montgomery's statements—if anything, the amendments reinforce the court's conclusion on this point. Accordingly, I conclude that Plaintiff's

proposed amendments to his § 1983 claim for deprivation of his liberty interest are futile and dismissal of Count II, without leave to amend, is appropriate.[3]

### III. Count III – Colo. Rev. Stat. § 24-50.5-103 (or, alternatively, § 24-114-102)

For the reasons discussed in Sections I.A and I.B, *infra*, the two statutory whistleblower protections Plaintiff claims that the Town violated when the latter terminated Plaintiff are inapplicable to the instant action. Accordingly, Defendants' Motion to Dismiss Plaintiff's third claim for relief is **GRANTED** and Plaintiff's Motion to Amend is **DENIED** as to Count III.

### IV. Motion to Amend for Implied Contract Counts

As part of his Motion to Amend Plaintiff seeks to include "two implied contract claims based upon information in the Town of Mountain Village's Municipal Code and Grievance Procedures, as well as new information discovered regarding the disclosure of [Mr. Kee's] termination by [Ms. Montgomery] to the community." *See* [#33 at 1]. Specifically, Plaintiff seeks to add allegations about a provision in the Town's Municipal Code and argues that this provision creates an implied contract of continued employment and, therefore, a property interest—the denial of which constitutes grounds for his § 1983 claim against the Town. [#33-2 at ¶ 22]. He also seeks to add allegations related to a grievance procedure and argues that the Grievance Procedure supports a claim of promissory estoppel and, therefore, the Town's refusal to consider his grievance acts as a denial of his due process rights in violation of § 1983. [*Id.* at ¶ 23].

Defendants challenge Plaintiff's Motion to Amend, in part, on futility grounds. "If a party opposes a motion to amend [...] on the grounds of futility, the court applies the same standard to

---

[3] Because this court concludes that Mr. Kee fails to state a cognizable liberty interest against either the Town or Ms. Montgomery, it does not pass on Ms. Montgomery's individualized arguments for dismissal.

its determination of the motion that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *JDK LLC v. Hodge*, No. 15-CV-00494-NYW, 2015 WL 5766466, at *2 (D. Colo. Oct. 2, 2015)

   ***Implied Contract of Continued Employment.***  Plaintiff avers that an implied contract of continued employment existed between he and the Town, and he seeks to add an additional source to his operative complaint to support this argument.  Specifically, he alleges that the Town's Municipal Code provisions as they relate to Plaintiff's former position as a Building Official create an implied contract of continued employment.  For the following reasons, I find that Plaintiff's proposed amendments to the operative Complaint are futile because—even with his proposed amendments—he has failed to allege a cognizable implied contract of continued employment to support his claim.

   As relevant here, Plaintiff proposes amendments to his operative Amended Complaint to include the following allegations and legal conclusions.

> First, the municipal code indicates that no person shall interfere with the Building Official in the execution of his specific job duties.  Further, the municipal code states that the Building Official shall receive the assistance of other officials of the Town to discharge his duties.  This code would indicate that the Town had intended that the Building Official's position to be [sic] secure in the execution of his assigned duties. . . . The intent of these provisions is obviously to ensure the safety of the citizens of the Town by offering some protection to this particular position. . . . The town through the Code provision and actions created an understanding that Mr. Kee would not lose his employment as a result of the appropriate execution of his job duties.

[#33-2 at ¶ 22].  Elsewhere, Plaintiff proposes amendments to include specific language from the "Building Regulations" chapter of the Town's Municipal Code, including a "non-interference clause indicating that 'persons shall not interfere with the Building Official carrying out any duties or functions.'"  [*Id.* at ¶ 8 (quoting Town of Mountain Village Municipal Code 17.7.2)].

   In Response to Plaintiff's Motion to Amend, Defendants argue that the Municipal Code does not create an implied contract of continued employment for Mr. Kee or a Building Official.

[#37 at 8]. "[I]n Colorado, [Mr. Kee] is presumed to be at-will and . . . his termination does not give rise to a cause of action," unless he can establish that he had a legitimate expectation of continued employment by means of an implied contract for continued employment because, as a public employee, Mr. Kee held his post "at the pleasure of the [Town] authorities and c[ould] be dismissed without cause, in the absence of restrictions or limitations provided by law." *See Rooker*, 841 F. Supp. 2d at 1217.

But here, as Defendants correctly point out, "[t]he Municipal Code language cited by the Plaintiff does not state that a Building Official can only be terminated under certain grounds or that he can only be terminated for cause or any other similar restriction." [*Id.*]. Thus, I conclude that "Plaintiff does not allege any facts from which the Court can infer that [he] had a contractual arrangement entitling [him] to continued employment." *Hunter v. Council on Firefighter Training*, 2017 WL 521573, at *3 (W.D. Okla. Feb. 8, 2017). "Accordingly," even with Plaintiff's proposed amendments, I would "grant[] [a] motion to dismiss with regard to Plaintiff's 42 U.S.C. § 1983 claims," *id.* at *3, and therefore find that amendment in this regard is futile.

*Promissory Estoppel.* Plaintiff proposes amendments to the operative complaint to include allegations that the Town's Grievance Procedure was not followed when he challenged his termination and, therefore, that he was denied a property interest afforded to him therein. Specifically, Plaintiff seeks to add the following allegations to support his claim that the Town's grievance procedure created a property interest in Mr. Kee's continued employment.

> The grievance procedure also gave the Plaintiff the right to grieve the decision regarding his termination and he was denied this right. . . . The grievance procedure indicates that an employee may grieve a termination decision to the Town Manager. The Town Manager indicated after Mr. Kee's termination that he could not grieve this decision because he resigned. She implied that he would have been able to grieve the decision had he not resigned. The Town Manager had taken this position despite receiving multiple statements by [Mr. Kee] to the contrary. By continuing to indicate that Mr. Kee resigned, [the Town Manager] denied him the due process

allowed in the Town's procedures. This process is separate from the Employee Handbook and includes no disclaimers other than a statement that a terminated employee may appeal the termination decision through this process. An employee such as Mr. Kee could reasonably believe that there were entitled to this grievance process as indicated in this policy.

[#33-2 at ¶ 23].

Notwithstanding the absence of disclaimers in the grievance procedure, the grievance procedure entitles employees like Mr. Kee to nothing more than <u>procedure</u>. And as this court discussed above, "it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest." *Angell*, 907 F. Supp. 2d at 1259. Accordingly, I find that the foregoing proposed amendments to Plaintiff's Complaint are futile.

For theses reasons, it is appropriate to deny Plaintiff's Motion to Amend.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED**:

(1)     Defendants' Motion to Dismiss [#26] is **GRANTED**;

(2)     Plaintiff's Motion to Amend [#33] is **DENIED**;

(3)     Plaintiff's First Amended Complaint [#14] shall be **DISMISSED without prejudice**;

(4)     Defendants, as the prevailing party, shall be awarded their costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1; and

(5)     The Clerk of the Court shall **TERMINATE** this matter accordingly.

DATED: December 11, 2019                          BY THE COURT:

                                                  _____
                                                  Nina Y. Wang
                                                  United States Magistrate Judge